IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

CAROLYN C. GRAVES, )
)
    Plaintiff, )
)
VS. ) CASE NO. _____
) JURY DEMAND
MID SOUTH WAFFLES, INC., d/b/a )
WAFFLE HOUSE, )
)
    Defendant. )

## COMPLAINT

JURISDICTION:

1. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission regarding which a Notice of Suit Rights document issued by Sarah L. Smith, EEOC Area Office Director that was mailed on May 2, 2012, and received by Plaintiff's counsel on May 4, 2012. Accordingly, this Honorable Court has jurisdiction of Plaintiff's ADA claims submitted herein, pursuant 42 U.S.C. §2000e-5(f)(3) and 42 U.S.C. §12117(a).

VENUE:

2. This Honorable Court has venue of this action pursuant to 28 U.S. C. §1391(a)(2) because Plaintiff resides in this District, Defendant has one or more business locations within the Middle District of Tennessee and all or at least a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

1

## THE PARTIES:

3. Plaintiff is a citizen and residence Rutherford County, Tennessee and has been at times pertinent to the facts of this cause.

4. On information and belief, Plaintiff submits that Defendant Mid South Waffles, Inc. has been a foreign corporation registered to do business in the state of Tennessee and other locations in Middle Tennessee, with a restaurant location at 794 Nissan Drive, Smyrna, Rutherford County, Tennessee at all times relevant to the facts of this litigation.

## FACTS:

5. Plaintiff was employed by the Defendant as a waitress at a Waffle House restaurant in Smyrna, Tennessee from October 21, 2009, through April 27, 2011. Prior to becoming Defendant's employee on October 21, 2009, Plaintiff had worked for a previous owner of the Smyrna Waffle House location for approximately eight to nine years. Prior to working at the Waffle House restaurant on Nissan Drive in Smyrna, Plaintiff had worked at a different Waffle House restaurant for approximately six years.

6. Plaintiff suffered a work-related injury to her right shoulder on February 5, 2011, while lifting dishes.

7. Plaintiff promptly reported her February 5, 2011, right shoulder injury to her employer.

8. Following her injury on February 5, 2011, the first medical treatment Plaintiff received was at the StoneCrest Medical Center emergency room where she was seen on February 5, 2011.

9. Pursuant to instructions from the StoneCrest ER doctor, Plaintiff was excused from working for the next two days.

10. The next treatment Plaintiff received for her right shoulder injury was from Dr. Marc R. Watkins at Concentra Medical Center in Murfreesboro where she began treatment on February 11, 2011.

11. On February 11, 2011, Dr. Watkins prescribed physical therapy three times a week for two weeks, and he also set restrictions of no lifting over ten pounds, no pushing/pulling over ten pounds of force, and no reaching above shoulders.

12. On March 14, 2011, Dr. Watkins ordered an MRI of Plaintiff's right shoulder.

13. When Plaintiff was seen by Dr. Watkins on April 1, 2011, she was advised that the MRI revealed a partial tear of the supraspinatus tendon in her right shoulder for which he continued the restrictions he had initially specified, and he referred Plaintiff to an orthopedic surgeon.

14. Through the date of her termination on April 27, 2011, Plaintiff continued working with the restrictions specified by Dr. Watkins on February 11, 2011.

15. Plaintiff promptly asserted a workers' compensation claim for her February 5, 2011, right shoulder injury.

16. Plaintiff's medical treatment has been provided by the employer as a workers' compensation benefit.

17. Even though Dr. Watkins advised Plaintiff on April 1, 2011, that her MRI report had revealed a partial tear of the right shoulder supraspinatus tendon and he had referred her for treatment to an orthopedic surgeon on that date, she was not seen by an orthopedic surgeon until she was seen by Dr. Kyle S. Joyner, Tennessee Orthopaedic Alliance, on May 3, 2011.

18. On April 27, 2011, Plaintiff was summoned to the back of the Waffle House restaurant on Nissan Drive in Smyrna by District Manager, Michelle Lowder, who confronted

Plaintiff by stating/asking: "What's your problem? You're moping, slacking, and not doing your job. I don't understand why you don't put the dishes up. You are off restrictions, you are not working under doctors' orders any more. You are no longer on workers' compensation. I want you out of my unit." Ms. Lowder then immediately terminated Plaintiff.

19. When Plaintiff was initially seen by orthopedic surgeon, Dr. Joyner, on May 3, 2011, he diagnosed Plaintiff as suffering right shoulder impingement and partial thickness rotator cuff tear, for which he performed surgery on June 20, 2011. He also, on May 3, 2011, set the following restrictions: no lifting over ten pounds frequently, no lifting over ten pounds maximum, occasional overhead work, and occasional outstretched arm use.

20. Plaintiff received no progressive discipline or advance warning of any kind that Defendant was considering terminating her.

21. At all times after Plaintiff was injured on February 5, 2011, through the date of her termination, her work performance met the reasonable and legitimate expectations of her employer, and she was capable of performing her job with reasonable accommodations.

22. During the period of Plaintiff's employment by Defendant, she was never sanctioned or disciplined with reference to her performance of employment duties.

23. Due to her shoulder injury, Plaintiff did experience some pain and difficulty as she properly performed her employment duties.

24. There was no individualized inquiry by the Defendant into Plaintiff's medical or disability condition prior to or at the time she was terminated on April 27, 2011.

25. Following the report of her on-the-job injury on February 5, 2011, and the setting of restrictions of Dr. Watkins, her restaurant manager, "Joel" accommodated her restrictions after she provided him with documentation.

4

26. Defendant's District Manager, Michelle Lowder, typically came to the restaurant where Plaintiff worked once or twice a week between the time Plaintiff was injured and her termination.

27. Plaintiff delivered documentation to Ms. Lowder confirming that she was to be seen by Dr. Joyner, and Ms. Lowder threw the documents away.

28. Plaintiff also told Ms. Lowder that she had a tear in her shoulder, and she showed Ms. Lowder documentation of the MRI results.

29. Following her termination, Plaintiff promptly filed a claim for unemployment benefits with the Tennessee Department of Labor & Workforce Development, Division of Employment Security. Defendant responded in writing to Plaintiff's unemployment claim by falsely claiming that Plaintiff had made inappropriate comments about co-workers to customers and other employees. With no hearing taking place as to Plaintiff's unemployment claim, it was denied.

30. Plaintiff then secured counsel and on May 18, 2011, appealed the denial of her unemployment benefits claim for which a telephonic hearing was scheduled for July 5, 2011.

31. After due notice to all parties, including the Defendant, a telephonic hearing occurred on Tuesday, July 5, 2011, at which Plaintiff appeared and testified by telephone. The Defendant, even though it had received notice of the July 5, 2011, unemployment appeal telephonic hearing, failed to appear. The earlier denial decision was reversed and Plaintiff was then awarded unemployment benefits after providing credible testimony at the July 5, 2011, hearing that, following her February 5, 2011, injury, she performed her duties to the best of her ability, and that she had received no warnings regarding her work performance prior to being notified of the termination.

32.	As a direct and proximate result of Plaintiff's termination, she has suffered a loss of income and a loss of employment benefits. She has additionally suffered humiliation, embarrassment, and mental anguish.

PLAINTIFF'S AMERICANS WITH DISABILITIES ACT (ADA) CLAIMS:

33.	Plaintiff incorporates by reference and re-alleges all of the allegations made in the preceding paragraphs.

34.	Defendant is an "employer" for ADA purposes pursuant to 42 U.S.C. §12111(2) and (5)(A) because it is a "covered entity" engaged in an industry affecting commerce and has had fifteen or more employees for each working day in each of twenty or more calendar weeks in the calendar year preceding Plaintiff's termination on April 27, 2011.

35.	Plaintiff was Defendant's employee for ADA purposes at times relevant to this litigation, pursuant to 42 U.S.C. §12111(4) because she was employed by an employer to whom the ADA applied.

36.	Pursuant to 42 U.S.C. §12111(a), Plaintiff was a "qualified individual" with a disability" who, with reasonable accommodations, was able to perform the essential functions of the employment position she held at the time she was terminated on April 27, 2011.

37.	At the time she was terminated, Plaintiff suffered from a "disability" for ADA purposes because her right shoulder injury substantially limited the major life activities of: (a) performing manual tasks; (b) lifting; (c) raising her arms above shoulder level; (d) working.

38.	At a time when Plaintiff was a qualified individual with a disability, she made a request on the first day she was seen by Dr. Watkins, February 11, 2011, or shortly thereafter, for the reasonable accommodations necessary to comply with Dr. Watkins' restrictions which were: no lifting over 10 lbs., no pushing/pulling over 10 lbs. of force, and no reaching above shoulder.

6

Case 3:12-cv-00790 Document 1 Filed 07/31/12 Page 6 of 8 PageID #: 6

39. Defendant accommodated Plaintiff's medical restrictions from February 11, 2011, to April 27, 2011.

40. Plaintiff had a record of having a disability because the Defendant was well aware from statements made by Plaintiff and Defendant's receipt of medical records pertaining to her work-related shoulder injury as to the nature of her injury, that she had a disability, that she was in need of accommodation of medically specified work restrictions, and because she had attempted to exercise her rights pursuant the ADA.

41. Plaintiff's termination was proximately caused by Defendant's failure to continue to offer reasonable accommodation for her disability; her having a record of having a disability; and in retaliation for her attempted exercise of her right to work with reasonable accommodations as provided in the ADA.

42. Plaintiff states to the Court she has filed a Complaint in the United States District Court for the Middle District of Tennessee in civil case number 3:12-cv-00414. That case involves the same facts as stated herein, and also contains a disability discrimination claim pursuant to the Tennessee Disability Act and Tennessee Human Rights Act. Plaintiff will move the Court to consolidate the instant action with the one already pending.

WHEREFORE, Plaintiff demands compensatory damages in the amount of TWO HUNDRED FIFTY-THOUSAND AND NO/100 DOLLARS ($250,000.00) if her employment is restored, or THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($300,000.00) if it is not.

Respectfully submitted,

R. STEVEN WALDRON, BPR #2767
Attorney for Plaintiff
WALDRON, FANN & PARSLEY
202 W. Main Street
Murfreesboro, TN 37130
(615) 890-7365